IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37027

| RICHARD NARANJO and SYLVIA NARANJO, husband and wife, | ) | 2011 Opinion No. 65 |
|---|---|---|
| | ) | |
| Plaintiffs-Appellants, | ) | Filed: November 3, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| IDAHO DEPARTMENT OF CORRECTION, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Cheri C. Copsey, District Judge.

Order granting motion to dismiss action, affirmed.

Fuller Law Office, Twin Falls, for appellants.  Daniel S. Brown argued.

Brassey, Wetherell & Crawford, LLP, Boise, for respondents.  Andrew C. Brassey argued.

LANSING, Judge

Richard and Sylvia Naranjo (the Naranjos) appeal from the dismissal of their tort action against the Idaho Department of Correction (IDOC).  They argue the district court erred when it granted a motion to dismiss for failure to timely serve the complaint.

I.

BACKGROUND

On December 10, 2008, the Naranjos filed a complaint against IDOC in which Richard Naranjo alleged that he sustained personal injuries from slipping on a wet floor that was negligently maintained by IDOC.  On June 2, 2009, the Naranjos delivered two copies of the summons and complaint to the office of a state deputy attorney general who represented IDOC. On July 7, 2009, IDOC filed a motion to dismiss pursuant to Idaho Rule of Civil Procedure 12(b)(5) on the ground that the Naranjos had not completed service of the complaint within six months of its filing as required by I.R.C.P. 4(a)(2).  IDOC pointed out that the

1

Naranjos had not delivered a copy of the summons and complaint to the secretary of state as required by the Idaho Tort Claims Act (ITCA), Idaho Code § 6-916, for initiation of a tort action against a state agency. Three days later, the Naranjos delivered a copy of the summons and complaint to the secretary of state. The Naranjos then filed a memorandum in opposition to the motion to dismiss, supported by an affidavit from their attorney.[1] In the affidavit, the attorney stated that prior to representing the Naranjos, he had never filed an action against IDOC, and "was uncertain as to whom and where service of the Summons and Complaint should be made." The affidavit continued:

> That your affiant, within a week prior to the date of May 29, 2009, contacted the office of the Idaho State Attorney General and was referred to one of the deputy attorneys that . . . dealt specifically with the issues involving the [IDOC].
> Your affiant . . . advised him that he had a pending lawsuit against the [IDOC]; and requested information from him as to whom service of Summons and Complaint should be made. . . .
> Your affiant was advised that he should serve two copies of the Summons and Complaint upon the [IDOC] at the office of the Deputy Attorney General . . . .
> Your affiant relied upon this information. . . .
> . . . .
> Your affiant herein asserts, on behalf of the Plaintiffs, that he should have been able to rely on the information furnished to him by the State of Idaho Deputy Attorney General as to whom and where said service of process should have been made with reference to the [IDOC] and that the Defendant should be estopped from asserting that the service . . . which occurred on July 10, 2009, was untimely.

After a hearing on IDOC's motion, the district court dismissed the case without prejudice.

On appeal, the Naranjos assert that IDOC should be precluded from seeking a Rule 4(a)(2) dismissal by the doctrine of quasi-estoppel, and that their failure to timely effect service of process should be excused because they demonstrated good cause for their failure to timely serve the secretary of state.

## II.

## ANALYSIS

There is no question that service on IDOC was untimely. Idaho Rule of Civil Procedure 4(a)(2) specifies that service must be made within six months after a complaint is

---

[1] The attorney then representing the Naranjos is not the attorney who represents them on appeal.

filed, absent a showing of good cause for noncompliance with that time limit. When the state of Idaho or an agency of the state is a defendant, service must be made by delivering two copies of the summons and complaint to the attorney general or a deputy attorney general *in addition to any service required by applicable statute*. I.R.C.P. 4(d)(5). Idaho Code § 6-916 is such a statute; it specifically requires delivery of the summons and complaint to the secretary of state with a copy to the attorney general for all tort actions against a state agency. Having filed their complaint on December 10, 2008, the Naranjos had until June 10, 2009, to serve IDOC by delivering copies of the summons and complaint to both the attorney general and the secretary of state. Although copies of the summons and complaint were timely delivered to a deputy attorney general on June 2, 2009, copies were not delivered to the secretary of state until July 10, 2009, one month late.

## A.    Quasi-Estoppel

The Naranjos assert that the district court erred by rejecting their contention that the doctrine of quasi-estoppel precluded IDOC from obtaining dismissal for insufficient service of process. Estoppel theories generally present mixed questions of law and fact. *Allen v. Reynolds*, 145 Idaho 807, 812, 186 P.3d 663, 668 (2008). Because these mixed questions are primarily questions of law, we exercise free review. *Id.*; *Highlands, Inc. v. Hosac*, 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997).

Estoppel may not ordinarily be invoked against a government or public agency functioning in a sovereign or governmental capacity. *Terrazas v. Blaine County ex rel. Bd. of Comm'rs*, 147 Idaho 193, 200-01, 207 P.3d 169, 176-77 (2009); *State ex rel. Williams v. Adams*, 90 Idaho 195, 201, 409 P.2d 415, 419 (1965); *Buell v. Idaho Dep't of Transp.*, 151 Idaho 257, 265, 254 P.3d 1253, 1261, (Ct. App. 2011). *Cf. Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 138, 997 P.2d 591, 599 (2000) ("The general rule is that administrative officers of the state cannot estop the state through mistaken statements of law."). When the government is not acting in a proprietary function, estoppel "must be invoked with caution and only in exceptional cases [with recognition] that its application is the exception and not the rule." *Boise City v. Sinsel*, 72 Idaho 329, 338, 241 P.2d 173, 179 (1952).

The Idaho Supreme Court has not delineated what circumstances may be so exceptional as to allow invocation of estoppel principles against the government, but whether extraordinary circumstances exist in a particular case is ultimately irrelevant if the elements of estoppel would

not be satisfied anyway. *See Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 845, 70 P.3d 669, 683 (2003) (holding quasi-estoppel did not apply when department did not take an inconsistent position, without discussing whether the case presented extraordinary circumstances); *Cmty. Action Agency, Inc. v. Bd. of Equalization of Nez Perce County*, 138 Idaho 82, 87, 57 P.3d 793, 798 (2002) (holding quasi-estoppel did not apply when board's actions were not unconscionable, without discussing whether the case presented extraordinary circumstance); *Willig v. State, Dep't of Health & Welfare*, 127 Idaho 259, 262, 899 P.2d 969, 972 (1995) ("Because we affirm the . . . decision that Willig did not prove the necessary elements of equitable and quasi estoppel, we do not address the further question whether estoppel may ever be applied against [the government]."); *Young v. Idaho Dep't of Law Enforcement*, 123 Idaho 870, 875, 853 P.2d 615, 620 (Ct. App. 1993) (holding quasi-estoppel did not apply when department did not take an inconsistent position, without discussing whether the case presented extraordinary circumstances). We find that to be the situation here. Even if quasi-estoppel could be invoked against the state agency, the Naranjos have not demonstrated that its application is merited here. Quasi-estoppel is properly applied when one party unconscionably asserts a position inconsistent with a previously taken position to the detriment of other party.[2] *City of Eagle v. Idaho Dep't of Water Res.*, 150 Idaho 449, 454, 247 P.3d 1037, 1042 (2011). *See also KTVB, Inc. v. Boise City*, 94 Idaho 279, 282, 486 P.2d 992, 995 (1971). We are not persuaded by

---

[2] The Idaho Supreme Court has generally described quasi-estoppel as an unconscionable change in position, but some ambiguity remains in the specific elements of quasi-estoppel. *See, e.g.*, *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 443, 235 P.3d 387, 393 (2010) (using a two-element test requiring an inconsistent position and either unconscionability, an advantage or disadvantage, or inducement); *Weitz v. Green*, 148 Idaho 851, 861, 230 P.3d 743, 753 (2010) (noting that "quasi-estoppel differs from equitable estoppel, in that the first and fourth requirements of equitable estoppel are not required"); *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (implying that unconscionability is a mandatory element of the two-element test); *Sagewillow, Inc. v. Idaho Dep't. of Water Res.*, 138 Idaho 831, 845, 70 P.3d 669, 683 (2003) (defining quasi-estoppel as equitable estoppel minus concealment and misrepresentation). *Accord Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 357, 48 P.3d 1241, 1246 (2002) (noting quasi-estoppel is a broadly remedial doctrine, often applied ad hoc to specific fact patterns); *Williams Lake Lands, Inc. v. LeMoyne Dev., Inc.*, 108 Idaho 826, 830, 702 P.2d 864, 868 (Ct. App. 1985) ("Because quasi-estoppel is an equitable doctrine, its application depends upon a case by case analysis of the equities involved, rather than upon precise definitional standards.").

the Naranjos' assertion that IDOC changed its position and that the change in position was unconscionable.

First, it is not shown that IDOC took inconsistent positions. According to the affidavit of the Naranjos' attorney, he asked a deputy attorney general how to serve the complaint for "a pending lawsuit against the [IDOC]," and the deputy attorney general responded by explaining that IDOC could be served by delivering two copies of the summons and complaint to his office. The affidavit does not state whether the Naranjos' attorney informed the deputy attorney general that the claim was brought under ITCA. If he did not, then the deputy attorney's response was correct, for I.R.C.P. 4(d)(5) provides that service upon the state or any governmental subdivision is made "by delivering two (2) copies of the summons and complaint to the attorney general or any assistant attorney general. . . ." Only if the action is brought under a statute specifically requiring that service be made upon other individuals or officials would service on the attorney general be insufficient. I.R.C.P. 4(d)(5). Accordingly, for myriad types of claims, service is made upon IDOC by delivering two copies of the summons and complaint to any deputy attorney general, without any additional service. For tort claims, however, Idaho Code § 6-916 requires an additional copy of the summons and complaint to be delivered to the secretary of state. Thus, a non-claim-specific position that IDOC is properly served by delivering two copies of the summons and complaint to a deputy attorney general, and a claim-specific position that a copy of the summons and complaint must also be delivered to the secretary of state when the claim is brought under ITCA, are not inconsistent. Both are correct and consistent with I.R.C.P. 4(d)(5).

The Naranjos also have not demonstrated unconscionability. They assert that it is unconscionable for IDOC to change its position after their attorney relied upon the deputy attorney general's statement because the Naranjos are now barred from refiling their action due to expiration of the statute of limitations. The Idaho Supreme Court rejected a similar argument in *E. Idaho Agric. Credit Ass'n v. Neibaur*, 133 Idaho 402, 987 P.2d 314 (1999). In *Neibaur*, the Eastern Idaho Agricultural Credit Association (EIACA) initiated a foreclosure action against the Neibaurs. *Id.* at 405, 987 P.2d at 317. The Neibaurs filed a motion to dismiss based on EIACA's noncompliance with a federal law mandating consideration of loan restructuring prior to foreclosure. *Id.* at 410, 987 P.2d at 322. EIACA argued that the Neibaurs were estopped from arguing noncompliance with the restructuring requirements because Mr. Neibaur had previously

5

indicated that he did not want his loan-restructuring application to be considered. *Id.* at 411, 987 P.2d at 323. The Supreme Court held:

> If one were to assume the Neibaurs' position to be inconsistent based on Ira Neibaur's deposition testimony, [the EIACA's] position cannot be said to rise to the level of unconscionability. The . . . foreclosure complaint was dismissed by the district court without prejudice. The underlying cause of action still exists. The reason a problem exists is the possible preclusive effect of the statute of limitations. The Neibaurs did not create that problem.
> . . . [It is not] unconscionable for the Niebaurs to insist on their statutory rights.

*Id.* Here, even if we were to assume IDOC's position was inconsistent, it does not rise to the level of unconscionability. The Naranjos' complaint was dismissed by the district court without prejudice, so refiling was not prohibited. Neither IDOC nor the deputy attorney general created the statute of limitations problem that the Naranjos now face.

The Naranjos' unconscionability argument also lacks viability because their attorney could have easily discerned the proper method of service by independently reading I.R.C.P. 4(d)(5) and I.C. § 6-916. The governing law was as accessible to the Naranjos' attorney as it was to the deputy attorney general.

The Naranjos have not demonstrated that IDOC changed its position, or that any alleged change in position was unconscionable. Therefore, this is not an appropriate circumstance for application of the doctrine of quasi-estoppel.

## B.    Good Cause

The Naranjos next assert that they have shown good cause for their late service of their complaint and that the delinquency therefore should be excused as allowed by I.R.C.P. 4(a)(2). Whether good cause exists under Rule 4(a)(2) for a plaintiff's failure to effect timely service is a factual determination. *Herrera v. Estay*, 146 Idaho 674, 679, 201 P.3d 647, 652 (2009); *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997). Consequently, this Court uses the same standard of review as that used to review an order granting summary judgment. *Campbell v. Reagan*, 144 Idaho 254, 256, 159 P.3d 891, 893 (2007). We construe all disputed facts and draw all reasonable inferences in favor of the non-moving party. *Id.* However, we do not presume error on appeal. *Murray v. Spalding*, 141 Idaho 99, 101, 106 P.3d 425, 427 (2005). The party who failed to effect timely service has the burden to demonstrate good cause. *Sammis*, 130 Idaho at 346, 941 P.2d at 318.

6

There is no bright-line test to determine whether good cause exists. *Martin v. Hoblit*, 133 Idaho 372, 375, 987 P.2d 284, 287 (1999). Courts look to factors outside of the plaintiff's control including sudden illness, natural catastrophe, or evasion of service of process. *Id.* at 377, 987 P.2d at 289. The Naranjos assert that the district court should have found good cause based on their attorney's inexperience with tort claims against IDOC, their reasonable reliance on a deputy attorney general, prejudice suffered as the result of expiration of the statute of limitations, IDOC's receipt of notice of the action within the six-month time frame, and their efforts to effect valid service. We address each of the arguments in turn.

### 1.     Counsel's inexperience

In an affidavit, the Naranjos' attorney stated that he had never before been involved in a suit against IDOC and did not know how to effect service. However, ignorance or misinterpretation of the rules is not good cause for failure to provide adequate service under I.R.C.P. 4(a). *Harrison v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 145 Idaho 179, 183, 177 P.3d 393, 397 (2008). Therefore, the attorney's inexperience and unawareness of the proper procedures did not constitute good cause.

### 2.     Reliance

The Naranjos assert that reasonable reliance may constitute good cause, but have failed to demonstrate that their reliance was reasonable. In our view, it is not reasonable to rely on an opposing attorney's representation or statement of the law when both attorneys have readily accessible means to read, interpret, and apply it. *See Campbell*, 144 Idaho at 257-58, 159 P.3d at 894-95 (no good cause when service was late because one attorney accepted in good faith that the other attorney would remind him to serve process); *Regjovich v. First Western Investments, Inc.*, 134 Idaho 154, 157-58, 997 P.2d 615, 618-19 (2000) (denying claim of equitable estoppel because party had readily accessible means to discover the truth, and finding no good cause on other grounds). *Cf. Veal v. United States*, 84 Fed. App'x 253, 255-56 (3d. Cir. 2004) (reliance upon the clerk's advice did not constitute good cause because clerk's office has no duty to provide step-by-step guidance). The Naranjos were able to follow other procedural requirements set forth in ITCA without the aid of the attorney general's office. With nothing to indicate that the Naranjos' trial attorney could not have independently ascertained or verified the proper service procedures, we conclude that their reliance on the advice of a deputy attorney general was not reasonable, and does not constitute good cause.

### 3. Prejudice

The Naranjos point out that they are prejudiced by the dismissal of their action because the claim is now barred by the statute of limitations, while IDOC would have suffered no prejudice from the late service. Our Supreme Court has made it clear, however, that neither a lack of prejudice to the defendant nor the running of the statute of limitations demonstrates good cause for noncompliance with I.R.C.P. 4(a)(2). *Campbell*, 144 Idaho at 257, 159 P.3d at 894 (holding lack of prejudice to the defendant is not good cause); *Martin*, 133 Idaho at 375-76, 987 P.2d at 287-88 (same); *Sammis*, 130 Idaho at 347, 941 P.2d at 319 (holding neither a lack of prejudice to the defendant nor the running of the statute of limitations constitutes good cause).

### 4. Constructive notice

The Naranjos next assert that IDOC received at least constructive notice of the lawsuit when the complaint was served on a deputy attorney general within the six-month time limit. It is well established, however, that a defendant's knowledge of a claim does not establish good cause for a plaintiff's failure to timely serve. *Campbell*, 144 Idaho at 257, 159 P.3d at 894; *Martin*, 133 Idaho at 375-76, 987 P.2d at 287-88; *Telford v. Mart Produce, Inc.*, 130 Idaho 932, 935, 950 P.2d 1271, 1274 (1998). Thus, notice to IDOC does not constitute good cause under I.R.C.P. 4(a)(2).

### 5. Attempted service

The Naranjos timely delivered two copies of the summons and complaint to the deputy attorney general's office. When considering whether good cause has been shown, a court may consider "a party's diligent efforts to effect service." *Rudd v. Merritt*, 138 Idaho 526, 532, 66 P.3d 230, 236 (2003); *Martin*, 133 Idaho at 377, 987 P.2d at 289. This generally includes efforts "to locate the [defendants] and to ascertain how . . . [to] serve them." *Sammis*, 130 Idaho at 347, 941 P.2d at 319. As part of the analysis, courts may also consider how long the plaintiff waited before attempting service. *Rudd*, 138 Idaho at 532, 66 P.3d at 236 ("Waiting five and three-fourths months before attempting to effect service does not show due diligence."); *Martin*, 133 Idaho at 377, 987 P.2d at 289 (finding no good cause when counsel waited until eleven days before the deadline to attempt service). The Naranjos' failure to effect timely service was specifically due to a lack of diligent efforts to ascertain how to serve IDOC. They not only made no effort to timely serve the secretary of state, they did not deliver the summons and complaint to

the deputy attorney general until eight days before the expiration of the six-month period. Thus, the Naranjos have not shown diligent efforts to serve IDOC.

The Naranjos add that when their "counsel was advised of the necessity of serving the Idaho Secretary of State, the same was forthwith done." However, "[t]he focus of the good cause inquiry is on the six-month time period following the filing of the complaint." *Harrison*, 145 Idaho at 183, 177 P.3d at 397. *See also Martin*, 133 Idaho at 375, 987 P.2d at 287; *Telford*, 130 Idaho at 935, 950 P.2d at 1274. Thus, any efforts to effect service outside the six-month period are irrelevant to the determination of good cause.

The Naranjos' arguments that they have shown good cause for failure to timely serve the complaint are without merit. Therefore, the district court did not err in dismissing the action pursuant to I.R.C.P. 4(a)(2) and 12(b)(5).

## C.    Attorney Fees

IDOC requests an award of attorney fees and costs on appeal pursuant to Idaho Appellate Rule 41 and Idaho Code § 12-121, and costs pursuant to I.A.R. 40. Attorney fees under Idaho Code § 12-121 will be awarded to the prevailing party on appeal when this Court is left with the abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Rudd*, 138 Idaho at 533, 66 P.3d at 237; *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). Although the Naranjos have not prevailed, we do not find their appeal to be so unreasonable or frivolous as to warrant an award of attorney fees. Therefore, IDOC's request is denied.

### III.

### CONCLUSION

The Naranjos have not shown error by the trial court. Therefore, the order dismissing the complaint is affirmed. Costs, but not attorney fees, to respondent.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**